STAHL *v.* LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY CO.[1]

1. RAILROADS—CROSSINGS—DUTY OF TRAVELER.
   Listening for signals of approaching trains is not the whole
   duty of one who approaches a railroad crossing, but he should
   be alert, and pay attention to the track.

2. SAME—WARNING SIGNALS.
   Recovery for an omission to give proper signals cannot be had
   in any case where the traveler approaching the crossing had,
   by any means, timely notice of the approach of the train.

3. SAME—RUNAWAY TEAM—PROXIMATE CAUSE OF INJURY.
   The running of a railroad train at a rate of speed slightly in
   excess of that allowed by a city ordinance is not the proxi-
   mate cause of an injury to one whose horses took fright at
   the train, and became unmanageable, when 55 feet from the
   track.

Error to Monroe; Kinne, J.   Submitted April 21, 1898.
Decided June 7, 1898.

Case by Frank Stahl against the Lake Shore & Michi-
gan Southern Railway Company for personal injuries.
From a judgment for plaintiff, defendant brings error.
Reversed.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-
Danner*, of counsel), for appellant.

*Charles A. Golden* and *Edward R. Gilday* (*Ira G.
Humphrey* and *Willis Baldwin*, of counsel, on applica-
tion for rehearing), for appellee.

MONTGOMERY, J.   Plaintiff recovered a verdict in an
action for damages sustained in a collision.   The collision

---

[1] Rehearing denied December 28, 1898.

occurred at the crossing of the defendant's road at Third street, in the city of Monroe. Plaintiff was engaged in hauling gravel; had drawn one load, and unloaded it, and was going back after another. He had a team that weighed about 2,700 pounds, and a new, heavy wagon. The train with which the collision occurred was a passenger train, and was substantially on time. The plaintiff testified that, when he looked at his watch, he thought the train must have gone west. Hubble street is one block from the railroad crossing, and plaintiff testified that, before reaching Hubble street, he brought his team down to a walk; that he looked out for a train, but did not see any. There were some obstructions in the way of a clear view, but at a point 81 feet from the crossing he could have seen a distance of 275 feet, and at a point 46 feet from the crossing he had an unobstructed view for 672 feet. The plaintiff testified that, when he was 55 feet from the track, the team became frightened, and that at this point he saw the engine and train coming; that, as soon as he saw it, he pulled back on the horses, and hallooed, "Whoa;" that he braced his feet against the end boards, but did not get a new hold of his reins; that both horses jumped on the track at the same time, and were running away before they had got over the track. He testified, further, that, in approaching the track, the team just went as they were a mind to,—took their own gait; that the way that he had the lines did not affect their speed one way or the other; just held a common line on them; that, if he wanted to stop them, he would have had a stronger hold than he did have; that he did not have a chance to do this; that he was leaning back, and pulling. He further testified on cross-examination that there would have been nothing to prevent his turning around when he got up as far as the sign, "Railroad Crossing." There was some testimony tending to show that the train was coming at a rate of speed somewhat in excess of that provided by an ordinance of the city, and also some testimony to show that the signals were not given.

Assuming the defendant to have been negligent in the particulars named, this negligence did not relieve the plaintiff from the exercise of due care in approaching the crossing.   He was still bound to use his senses to avoid a collision with the train.   The plaintiff's own testimony shows that, at a point 55 feet from the crossing, he discovered the train approaching, and that he had a gentle team.   It is not shown, nor is it to be assumed, that the plaintiff would have stopped short of this point if he had known of the approaching train earlier.   On the contrary, it is common experience that a driver of a safe team approaches much closer to an approaching train in safety. Where, then, is the causal connection between the speed of the train and the injury?   It cannot be said that the unusual speed of the train caused the fright of the horses, or that, if running within the prescribed rate of speed, the fright would not have occurred.   It was the fact of the train at this point which occasioned the fright, and not the rate of speed at which the train had been running to reach the point.   The plaintiff discovered the train in ample time to protect himself, whatever may have been its speed.   An unlooked-for accident, viz., the fright of the horses, resulted in injury.   A liability does not attach to every act of negligence; a liability attaches only when the injury results from the negligence.   *Houston, etc., R. Co.* v. *Wilson*, 60 Tex. 142.   And recovery for an omission to give proper signals cannot be had in any case where the traveler approaching the crossing has, by any means, timely notice of the approach of the train.   *State* v. *Railroad Co.*, 69 Md. 339; *Chicago, etc., R. Co.* v. *Houston*, 95 U. S. 697; *Pakalinsky* v. *Railroad Co.*, 82 N. Y. 424; 3 Elliott, R. R. § 1158.

The collision cannot justly be said to have resulted from the speed of the train.   If plaintiff had attempted to cross after discovering the train, there would have been some plausibility in claiming that the extraordinary speed caused the injury, although the rule is pretty well settled that one cannot balance the probabilities in such a situa-

tion, and, taking the chance of collision, drive in front of an approaching train. *Haas* v. *Railroad Co.*, 47 Mich. 401. But in this case the plaintiff's contention is that he made no attempt to cross. When he was 55 feet from the track, his horses took fright at the train, and "kept jumping ahead faster and faster, until they reached the track." Would the horses have been less likely to take fright if the bell had been sounding? Would they have been less likely to take fright if the train had been going at less than six miles an hour, instead of running at a rate slightly in excess of that? Very clearly not. The alleged negligence of the company in failing to ring the bell and in excessive speed, if shown, did not cause the injury, but the injury was caused by the fright of the horses at an approaching train of cars, which it was plaintiff's duty to consider as at least a possibility; for the authorities are substantially agreed that one approaching a crossing may not neglect attention to the track, relying upon hearing signals of approaching trains, but must be alert.

Whether the plaintiff had proper control of the team is at least a doubtful question on this record, but, assuming he was not in fault in this respect, the negligence imputed to defendant was not the cause of the collision. It follows that the request of defendant to instruct a verdict should have been given.

Judgment reversed, and no new trial ordered.

The other Justices concurred.