## CAVANAUGH v. MICHIGAN CENTRAL RAILROAD CO.

RAILROADS — PROXIMATE CAUSE — NEGLIGENCE — SPEED — BLOWING WHISTLE.

Evidence that plaintiff, driving a horse and milk wagon, stopped, looked, and listened before crossing defendant's tracks, that he saw no train, and proceeded until his horse was on the rail, when he saw a train coming around a curve from the west, that he considered it safer to proceed than to back up and urged the horse forward, succeeding in almost crossing, but that the engineer blew the whistle sharply and frightened the animal, which began to prance and would not advance or back up, and the locomotive collided with the rear wheel of the rig and injured plaintiff, was insufficient to sustain a verdict for his injuries since the proximate cause of the accident was the blowing of the whistle whereby the horse became frightened, not the alleged unlawful speed of the train, and it was not negligence for defendant's engineer to sound the whistle in approaching a crossing.[1] BIRD, MOORE, and KUHN, JJ., dissenting.

Error to Kent; McDonald, J. Submitted Novem-

[1] As to the liability of a railroad company for frightening horse on highway by engine, car, etc., on or near crossing, see notes in 3 L. R. A. (N. S.) 111 and 42 L. R. A. (N. S.) 568.

ber 22, 1911. (Docket No. 168.) Decided May 28, 1913. Rehearing denied October 1, 1913.

Case by Bert Cavanaugh against the Michigan Central Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Wilson, Wilson & Rice (Henry Russel* and *Frank E. Robson,* of counsel), for appellant.

*Lombard & Hext,* for appellee.

BIRD, J. *(dissenting).* The plaintiff seeks to recover compensation for injuries received at the intersection of Kalamazoo avenue with defendant's tracks in the city of Kalamazoo. Kalamazoo avenue extends east and west, and is crossed by defendant's tracks at an angle of about 45 degrees. From the intersection the tracks curve off to the southwest, and are soon lost to view behind buildings and other obstructions. The crossing is supplied with gates; but, as they were not in operation until 10 o'clock on Sunday mornings, they furnished no protection. Between 9 and 10 o'clock Sunday morning, April 24, 1910, the plaintiff was driving west on Kalamazoo avenue in his milk wagon. When 30 or 40 feet from the tracks, plaintiff stopped his horse, looked and listened, but neither seeing nor hearing anything he proceeded on his way toward the tracks. When his horse reached the first or eastbound track, he saw a train coming around the curve from the west. Thinking it would be safer to proceed than to attempt to back up, he urged his horse forward; but before his wagon had cleared the track the engineer blew three blasts of the whistle so vigorously that it frightened the horse, and he began to prance, and plaintiff could neither get him forward nor back. While in this situation the locomotive collided with

the rear wheel of the wagon and threw plaintiff out and injured him.

The negligence principally relied upon by the plaintiff was the operation of the train at a speed in excess of the 10-mile an hour limit allowed by the city ordinance. It was shown that the train was traveling from 20 to 35 miles an hour. The trial resulted in a verdict for plaintiff, and the defendant has assigned error in this court.

The defense most urged was that plaintiff was guilty of contributory negligence, and error is assigned because the trial court refused to direct a verdict for that reason.

It is claimed by defendant that the uncontradicted testimony shows that when plaintiff was 12 feet from the tracks he could see an approaching train 1,300 feet away, and its figures show that, had plaintiff seen the train when it was 1,300 feet away, he could have traveled 156 feet and been to a place of safety before the train reached the crossing, assuming that the train was traveling 35 miles and plaintiff 4 miles an hour. The difficulty with this reasoning is in assuming that plaintiff saw the train at the precise moment when it appeared around the curve. The plaintiff testified that he was looking and listening from the point where he stopped until he got to the track; but this testimony, fairly construed, would not justify defendant's conclusion that he saw the train at the precise moment when it was first discernible from the point which he occupied. Again, defendant, in its computation, takes no note of the time the horse was prancing on the tracks, when he could not be made to move in either direction.

Defendant also insists that, had plaintiff looked, he could have seen the train when he was in a place of safety, and in attempting to cross he was guilty of contributory negligence. The plaintiff testified that his horse had reached the track before he saw the

train, and that he thought he would have time to get across in safety. Subsequent events tend to verify his judgment, because, notwithstanding his delay on the crossing, he got so nearly across that the train only collided with his rear wheel. It is safe to assume, had he not been so delayed, he would have cleared it without injury. These considerations made plaintiff's negligence a question for the jury.

In reliance upon plaintiff's testimony that he could have reached a place of safety, had it not been for the whistling, the defendant requested the court to charge the jury that the whistling was not a negligent act, but was the proximate cause of the accident, and therefore no recovery could be had. Upon this branch of the case the trial court charged the jury as follows:

"As I said, it is disputed as to what caused the injury; the plaintiff claiming that it was caused, in part at least, by the negligence of the defendant in running its train at a greater rate of speed than 10 miles an hour, and the defendant claiming that the proximate cause was the blowing of the whistle. The act of blowing the whistle was not negligence, as I have said, and if that act was the sole cause of the injury the defendant would not be to blame, and plaintiff cannot recover. If, however, the defendant was guilty of negligence in running its train at a higher rate of speed than 10 miles an hour at the time of the accident, and that fact, with the other fact of blowing the whistle, together produced the injury, the defendant would be liable for any such acts, and the running of the train at a high rate of speed would be the proximate cause. Stated in a brief, abstract way, the proposition is this: Where two concurrent acts, one of which is negligent, and the other is not, produced the injury, and it would not have been produced but for the negligent act, such an act is the proximate cause; that is, that the blowing of the whistle and the running of the train at a high rate of speed together concurring, they concurred in producing the injury. The negligent act, which would be the running of the train at a high rate of speed, would be the proximate cause.

If the two acts did not concur in producing the injury, but it was produced by one or the other of them, it must appear, by a fair preponderance of the evidence, that it was produced by the negligent act, or the plaintiff cannot recover. As I said, in this case the negligent act would be the running of the train at a high rate of speed, and the innocent act, or nonnegligent act, would be the blowing of the whistle."

This was a correct statement of the .aw and a proper application of it to the testimony, and was justified under the authority laid down in *Selleck* v. *Railway Co.*, 93 Mich. 381 (53 N. W. 556, 18 L. R. A. 154). In Cooley on Torts (1st Ed.), at page 70, it is said that:

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through. the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. * * * It is equally true that no wrongdoer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss, if that cause was put in operation by his own wrongful act. To entitle such party to exemption he must show not only that the same loss might have happened, but that it must have happened if the act complained of had not been done" —citing *Davis* v. *Garrett*, 6 Bing. 716.

Counsel for defendant suggest that the situation is ruled by *Stahl* v. *Railway Co.*, 117 Mich. 273 (75 N. W. 629). We think that case is clearly distinguishable from the present one upon the facts.

Error is also assigned because of the refusal of the trial court to submit three special questions to the jury. They were refused on the ground that the answers to them would not be controlling. We have

examined them, and are satisfied that the trial court was right in refusing to submit them.

The judgment of the trial court is affirmed.

MOORE and KUHN, JJ., concurred with BIRD, J.

OSTRANDER, J. If plaintiff's horse had been frightened by a newspaper blowing about its head or feet, or if the delay in passing over the track had been occasioned by any other cause not chargeable to a wrongful act, of defendant, the principle involved would be the same. Plaintiff claims that he took the proper and adequate precautions to cross the track in safety. He had ample time to cross the track in safety if he had proceeded. He did not cross it in safety because, having passed upon the track into a place of danger, his horse refused to proceed. It was the frightened horse and its performance, and not the speed of the train, which was the proximate cause of the plaintiff's injury. I cannot distinguish the case at bar and *Lambeck* v. *Railroad Co.*, 106 Mich. 512 (64 N. W. 479), and cases cited in opinion, *Murphy* v. *Railroad Co.*, 107 Mich. 627 (65 N. W. 753) ; *Doak* v. *Township of Saginaw,* 119 Mich. 680 (78 N. W. 883), and *Bell* v. *Village of Wayne,* 123 Mich. 386 (82 N. W. 215, 48 L. R. A. 644, 81 Am. St. Rep. 204).

The judgment should be reversed.

STEERE, C. J., and MCALVAY, BROOKE, and STONE, JJ., concurred with OSTRANDER, J.