THE BAGDAD LAND & LUMBER COMPANY, A CORPORATION, *Plaintiff in Error,* v. C. L. MONEYWAY, *Defendant in Error.*

Opinion Filed December 3, 1920.

1. "When the driver of an automobile attempts to cross a railroad track at a road crossing and has ample time to do so, but his engine chokes down and the automobile stops upon the railroad track, and it is not alleged in the declaration that the choking down of the engine was caused by the defective condition of the railroad crossing, the proximate cause of the accident is the stopping of the automobile, and the railroad is not guilty of negligence in not assuming that it would break down and stop on its track, provided that when the railroad employes saw that it had stopped on the track they at once did everything in their power to stop the train."

2. Persons operating a railroad train are not called upon to presume that the engine of an automobile, about to cross a railroad track sufficiently far ahead of the train to enable it to cross in safety, will choke down and cause the automobile to stop on its tracks.

3. The obligation of a railroad company to a person crossing its tracks in an automobile that has ample time to cross ahead of an approaching train does not begin until the instant its employes see that the automobile has stopped on its tracks, and if from that moment, they do all in their power to avoid a collision with the automobile, but are unable to do so, they are not chargeable with actionable negligence.

A Writ of Error to the Circuit Court for Santa Rosa County; A. G. Campbell, Judge.

Judgment reversed.

*McGeachy & Lewis,* for Plaintiff in Error;

*W. W. Clark* and *J. T. Wiggins,* for Defendant in Error.

BROWNE, C. J.—The defendant in error obtained a judgment against the Bagdad Land & Lumber Company, a corporation, for damages to his automobile by a log train belonging to the plaintiff in error. The declaration contains three counts. The first count recites among other allegations, that "as the plaintiff's automobile rolled upon the crossing of said railroad track the engine thereof, without the fault of plaintiff choked down, and stopped, and that thereupon the said defendant, through its agents and servants rapidly and negligently propelled the said locomotive and train of cars against the plaintiff's automobile."

The plaintiff below testified in part as follows: "I left home between six-thirty and seven o'clock in the morning. The railroad is about seventy-five yards from my house and it was kind of chilly, my car was cold and just before I reached the railroad my car choked down, I looked up the track and saw the train approaching, I jumped out, tried to crank my car, I could not do it, I tried to shove it off, and could not, and then I jumped in front of it on the track and tried to flag the train. I tried to flag the train down. Before I got to the railroad track I could not see up the track to see whether there was a train coming or not, on account of a row of trees beside Mr. Stewart's fence. The engineer did not blow the whistle before it got down there. * * * I cranked my car,—or tried to crank it. I don't have any starter on it. I attempted to shove it off of the track straight ahead. * * * That crossing right there is right smooth.

I don't know what was wrong with my car that morning that made it choke down unless it was cold; and I had just had it overhauled and it was stiff. I didn't try to crank it after the train struck it, I didn't touch it. I run just around the side of my car, I didn't run up the track. I first discovered the train after I had stopped on the track and saw the train coming and I tried to crank off. After I tried to crank it and saw I could not and then I tried to shove it off and I could not. I could not do it, so then I tried to flag them. The engine was a hundred and fifty yards away then, I would say. They were running between ten and fifteen miles there when they hit the car."

S. F. McQuagge, a witness for the defendant, testified: "I work for the Bagdad Land & Lumber Company. I was working for that company in September, 1919. I began working for them then. I was working on the log train. I was on the log train coming in from Munson going towards Bagdad on the occasion of the striking of a car up in the northwest end of the town of Milton. I was on the engine. I was sitting upon the fireman's seat. I was head brakeman on the train. When the train was coming in the engineer blew the whistle at the whistling board right there at Rhoda's crosing,—Rhoda's gate. Mr. Colbert, the engineer, blew the whistle. As we came on, entering into the town I was sitting on the fireman's seat. I saw this car; I saw it just before it got up on the railroad track. I was sitting on the left hand side. I could see around the engine and see the car, still. When I saw the car I was about 350 feet from it I guess. Between three and four hundred feet. * * * After the car stopped on the track Mr. Moneyway got out of the car, made a motion to stoop down and crank the car, failed

to start the car from the looks of it, walked back up the road and gave us that (waiving his hand) gave us the high hand, backed off and laughed when he saw the engine was going to hit the car. Backed off and laughed at us. The engineer put on his brakes and skidded his engine by the car, trying to stop. I did not examine the engine wheels after the accident. I do not know whether anything happened to them or not. I know what brakes the engineer put on, he put on the emergency brakes."

F. B. Colbert, a witness for the defendant, testified: "I was on the engine the morning that Mr. Moneyway's car was struck. I know the position in town where the car was struck. It was just before this F. & A. depot, a couple of hundred yards—two or three hundred yards. Perhaps it was more than that. I don't know the names of the streets and crossings up there. I don't know the names of the people who live along there. I was going south. His car was on the second street crossing. When I first saw this car he was just off of the railroad a little piece. I could see it from where I was. When I first saw it the best I can judge it was about ten or fiifteen feet from the tracks—somewhere along like that. He attempted to cross the tracks with his automobile in front of the train. I don't know what happened to the car,—it didn't go across,—it stopped on the track. Mr. Moneyway got out of the car,—I guess it was Mr. Moneyway,—it was whoever was in the car. He got out of the car and got in front of it. I don't know whether he tried to crank it or not,—did something, and I tried to stop when I saw the car was stopped on the track. I tried to stop the train. Then he went back off the track. I tried to stop the train just as soon as I saw the car stop on the track. I applied my brakes—the automatic air brakes. Yes,—we have emergency, automatic and independent air

brakes, both on the engine. They are both on the same brake. You can put it on in an emergency. I put it on in emergency. After I saw that car on the track I did everything I could to stop the engine. I applied the brake in emergency. That was everything I could do. The brakes were put on the train too. The train wouldn't stop, it just kept coming on and shoved the engine on down. I don't know what size load I had. It was a heavy load. We had eighteen cars loaded with logs. I don't know what the length of the logs was. They had been cut,— the tops cut off. They were the full length of the trees on the cars. They don't cut these trees up, they just put the full length trees on, except they cut the tops off. There was a grade there where this engine struck this car. It was a down grade. When I applied my brakes the engine wheels skidded on the rail. I found it 'spotted' the wheels—had a spot on the wheels where they were dragged on the rails. It left a slick, smooth spot on them. This was caused by the wheels sliding on the rails. That happened when I tried to stop the engine, it dragged the car."

The uncontradicted testimony is that the railroad crossing at Hunt Street, where the accident occurred, is smooth; that the train was at least 150 yards away when the automobile's engine stalled; that after it stalled, Mr. Moneyway got out of his car, tried to crank it, and failing to start the engine, tried to push it off the track; failing in that he went on the track and tried to flag the train; the operators on the train saw the automobile when it stopped on the track, and at once tried to stop the train; they applied the automatic and emergency brakes to the engine, and put the brakes on the train also, and used every means possible to stop the train, which was com-

posed of eighteen cars loaded with heavy logs; the train was making about ten miles an hour on a down grade.

What then was the proximate cause of the injury? When he attempted to cross the track, the train was 150 yards away, and there was ample time for him to have passed over in safety and been considerable distance on his journey, but for the choking down of his engine.

This case comes within the rule laid down by this court in Louisville & N. R. Co. v. Harrison, 78 Fla. 381, 83 South. Rep. 89, that: "When the driver of an automobile attempts to cross a railroad track at a road crossing and has ample time to do so, but his engine chokes down and the automobile stops upon the railroad track, and it is not alleged in the declaration that the choking down of the engine was caused by the defective condition of the railroad crossing, the proximate cause of the accident is the stopping of the automobile, and the railroad is not guilty of negligence in not assuming that it would break down and stop on its track, provided that when the railroad employes saw that it had stopped on the track they at once did everything in their power to stop the train."

The persons operating the train were not called upon to presume that the automobile's engine would choke down and cause it to stop on the track. "The obligation of the railroad began only at the instant that its employes knew that the auto had stopped on the railroad track. At that instant it became its duty to stop the train if possible. This the testimony discloses was done, but it was impossible to stop the train in time to prevent the collission." Louisville & N. R. Co. v. Harrison, 78 Fla. 381, 83 South. Rep. 89; Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558; Atlantic Coast Line R. Co. v. Miller, 53 Fla. 246, 44 South. Rep. 247.

At the conclusion of the testimony a request for the court to charge the jury to find a verdict for the defendant was refused, and exception noted.

As the evidence shows that the proximate cause of the accident was the choking down of the engine of the automobile belonging to the plaintiff below, and fails to disclose any negligence on the part of the plaintiff in error, there could be no verdict for the plaintiff, and the defendant was entitled to a directed verdict in its behalf.

The judgment is therefore reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.