### KEEL, ADM'R. v. SEABOARD AIR LINE RY.

#### (114 S. E., 761)

1. NEGLIGENCE—PROXIMATE CAUSE OF INJURY DEFINED.—The law of proximate cause requires an unbroken sequence between the prime act of negligence and the injury; and, when it appears that an active cause intervened between the prime act and the injury producing the injury, the prime act will not be deemed the proximate cause unless it appears that the intervening act was itself a result reasonably to have been expected from the prime act, in which case the connection between the prime act and the injury is maintained.

2. RAILROADS—OPERATION OF DEFECTIVE AUTOMOBILE HELD PROXIMATE CAUSE OF INJURY TO OCCUPANT BY TRAIN.—Where the occupants of an automobile saw an approaching train in time to stop or turn aside, and the failure to do so was due either to the driver's fault in timing in his movements or to the defective brakes by which the car could not be prevented from running into the train, the railroad company, though negligent in not giving the statutory signals, was not liable for the injury to one of the occupants.

Before SHIPP, J., Allendale, September, 1921. Affirmed.

Action by J. C. Keel as administrator of estate of J. O. Walker, deceased, against Seaboard Air Line Railway. Judgment for defendant and plaintiff appeals.

The following is the formal order of non-suit:

It appearing that the only reasonable inference to be drawn from the testimony offered by the plaintiff in the above cause is that the injuries complained of were the result of the negligence of the person in charge of plaintiff's intestate, and that negligence on the part of the plaintiff's intes-

tate was the proximate cause of said injuries, now, on motion of Harley & Blatt and R. P. Searson, Esqs., attorneys for the defendant, Seaboard Air Line Railway, it is ordered that a non-suit in the said cause be, and the same is hereby, granted upon the grounds set forth in the record, and that the complaint be dismissed with costs.

The order refusing to vacate non-suit follows:

This is a motion to take off or set aside the order of non-suit granted by me at Allendale at the Fall term of Court. Owing to the earnestness of plaintiff's counsel, I have given the motion serious consideration, and after closely examining the testimony I am of the opinion that the non-suit was proper. Claire Peeples, one of plaintiff's witnesses, makes it clear that the occupants of the automobile saw or heard the train in ample time to have stopped the car. Witness said-they knew of the approach of the train and tried to stop. He said that when they tried to stop they were as far from the track on which the train was running as from witness to a window in the Court House, which he designated as the window at which the man with glasses on was sitting. This window was about 35 or 40 feet from witness, as testified by other witnesses. It is true that Claire Peeples did at one time say it was about 12 feet, but he pointed out the window, and the Court and jury could see that the estimate of the distance as 35 or 40 feet was correct. The car was running about 10 miles an hour, and the testimony was that a car (auto) running at 10 miles could be stopped in about 10 feet. The auto was in fact brought almost to a standstill on the second track, and it would have avoided the collision, had the brake worked properly or had the car been managed properly. Therefore, it seems to me that the negligence of the railway company was not the proximate cause of the injury. The motion is accordingly refused.

*Messrs. J. E. Tobin and Holman & Boulware,* for appellant, cite: *In motion for non-suit most favorable construc-*

*tion must be given testimony:* 104 S. C., 414; 103 S. C., 1; 107 S. C., 367.   *Duty of person in sudden peril:* 82 S. C., 71.   *In absence of statutory signals and with obstructions at place, question was for the jury:* 72 S. C., 389; 76 S. C., 368; 104 S. C., 113; 106 S. C., 123; 81 S. C., 333.   *Failure to give signals will be presumed `to be cause of accident:* 115 S. C., 115.   *Unless occupants of car knew of approach of train:* 34 S. C., 444; 106 S. C., 123.   *Questions for jury:* 82 S. C., 71; 1 Strob. L., 525; 52 S. C., 323.

*Messrs. Harley & Blatt and R. P. Searson,* for respondent, cite:   *Duty of traveler at railroad crossing:* 98 S. C., 145; 72 S. C., 389; 76 S. C., 368.   *Question for Court:* 94 S. C., 143; 58 S. C., 491.   *Proximate cause:* 22 R. C. L., 110, 111, 113; 39 A. L. R., 251; 126 A. L. R., 595; 127 A. L. R., 855; 95 U. S., 117; 105 U. S., 249; 57 A. L. R., 786; 125 A. L. R., 876; 109 Tenn., 331; 88 Md., 482; 78 Neb., 304; 56 Fla., 735; 58 N. J., 642; 22 Penn., 54; 52 S. C., 324; 76 S. C., 204; 77 S. C., 375.

December 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The plaintiff's intestate, J. O. Walker, Jr., received personal injuries resulting in his death several hours thereafter in a collision between the automobile in which he was riding and a freight train of the defendant at a public street crossing in the Town of Estill.

The administrator first brought an action under Lord Campbell's Act, which resulted in a verdict for the defendant.   Upon appeal the judgment was affirmed by this Court. 108 S. C., 390; 95 S. E., 64.

Thereafter the administrator brought this action under what is known as the survival statute (Section 3693, Vol. 1, Code of Laws A. D. 1912).   The attorneys for the respondent conceded that the two actions are separable and

distinct under *Peeples v. Railroad Co.,* 115 S. C., 115; 104 S. E., 541.

At the close of the testimony the Circuit Judge (Judge Shipp) directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appeals.

It appears that the main line of the defendant's railroad running through the Town of Estill, upon a course practically due north and south, crosses a principal street of that town known as Third Street, which runs upon a course due east and west, a very short distance south of the depot, which is located on the west side of the railroad. Traversing Third Street at the point in question, there are three railroad tracks, practically parallel with each other. The most westerly of these tracks is known as the "house track," the middle one the "passing track," and the farthest east the "main line." One approaching the crossing, traveling in Third Street, and proposing to cross from the west to the east side, would encounter first the house track, then the passing track, and lastly the main line. From the center of the house track to the center of the passing track it is 13 feet 5 inches; from the center of the passing track to the center of the main line it is 14 feet. So that from the center of the extreme western track, the house track, to the center of the extreme eastern track, the main line, it is 27 feet 5 inches.

The deceased at the time of the unfortunate occurrence was riding in an automobile, traveling in Third Street and making for the crossing from the west side. The evidence adduced by the plaintiff shows that at a point 10 or 15 feet before the car reached the house track the driver saw the train coming and slammed on the brakes; that the car did not respond to the application of brakes, but the wheels skidded, and the car drifted across the passing track and ran into the third car from the engine as the train passed on the main line, occupying the crossing. At the point at

which the brakes were applied the car was at least 37 feet from the center of the main line. That it could ordinarily have been stopped or turned aside within that distance cannot be controverted.

There is not a particle of evidence in the case tending to establish the allegations of negligence that the statutory signals were not given. The only two witnesses who testified along this line were unable to give even negative evidence on the point. One of them testified that he did not know whether the signals were given or not. The other testified that the whistle was sounded, but had no recollection whether the bell was ringing or not.

In view of the situation at Estill, however, the importance of Third street, its frequent use as the principal street of the town crossing the railroad track, the unusual time of that particular train, the obstruction of the view by standing cars, depot, warehouse, and other houses, the high rate of speed, and perhaps other circumstances, the question of proper operation of the train under the circumstances, regardless of the question of statutory signals, would ordinarily be one of submission to the jury. But, assuming that to be true, the evidence must also at least tend to show that such operation, if negligent, was the proximate cause of the collision. The evidence shows that the occupants of the car were fully advised of the approach of the train in ample time to have stopped the car or turned it aside; that their failure to do so was due to a defect in the brakes by which the car could not be prevented from drifting along and actually running into the train. The illustration of the runaway horse given by the learned Circuit Judge is apt.

The law of proximate cause requires an unbroken sequence between the prime act of negligence and the injury; and when it appears that an active cause intervened between the prime act and the injury, producing the injury, the prime act will not be deemed the proximate

cause unless it appears that the intervening act was itself a result reasonably to have been expected from the prime act, in which case the connection between the prime act and the injury is maintained—the sequence is not broken.   See the very clear statement upon the subject in *Sandel v. State,* 115 S. C., 177; 104 S. E., 567; 13 A. L. R., 1268.

It is clear that the immediate cause of the injury was the defect in the brakes which prevented the occupants of the car from availing themselves of the knowledge of the train's approach.   It was a cause which intervened between the alleged negligent operation of the train and the injury, and cannot be said to have maintained the sequence between the prime act and the injury, unless it appear that the defect in the brakes and the consequent failure to stop the car in time was a result of the defendant's negligence which it should have anticipated as reasonably likely to occur.   It cannot be conceived how this can be true unless the occupants of the car acted under the impulse of excitement due to a sudden emergency, of which there is neither allegation nor evidence.

The distinction is clear between the case at bar and one where the driver of a team, on account of a similar negligent operation of a train, has driven so near to the train as to cause the fright of his horses and a consequent collision.   There the fright would be considered a natural result of the operation of the train, directly caused by it.   But if his team should under the same circumstances be frightened by some other cause not attributable to the railroad company, it could not be so considered, so as to maintain the sequence between the prime act of negligence and the injury. This is exactly the case at bar.

The evidence is uncontradicted and comes from the plaintiff's witnesses that the occupants of the car saw the train coming in ample time to stop or turn aside even if the brakes were defective.   The conclusion is irresistible that

the failure to do so was due either to defective brakes, or, as in the case of *Gibson v. Railroad Co.,* 110 S. C., 331; 96 S. E., 519, to the conception that "by timing his movements and still running his automobile the train would pass over the crossing before he reached it," either of which would be an intervening active cause not produced by the fault of the defendant and breaking the sequence between the prime act and the injury.

It would not appear to admit of a doubt that, if an automobile driver should be apprised of the approach of a train in ample time to successfully negotiate the crossing, and in the attempt his automobile engine should choke upon the track, and a collision should ensue, the defect would be the sole proximate cause of the collision, notwithstanding the negligent operation of the train. *Bagdad v. Moneyway,* 80 Fla., 784; 86 South., 687; *Railroad Co. v. Harrison,* 78 Fla., 381; 83 South., 89; *Pedigo v. Railroad Co.* (Ky.), 68 S. W., 462; *Stahl v. Railroad Co.,* 117 Mich., 273; 75 N. W., 629; *Lane v. Railroad Co.,* 132 Mo., 4; 33 S. W., 645. There could hardly be a distinction between a defect which held the car on the track and one which caused it to crash into the train on the crossing.

In *Lane v. Railroad Co.,* 132 Mo., 4; 33 S. W., 645, quoting from the syllabus, it is held:

"A railroad company cannot be held responsible for the fact that a team was running away when struck by its locomotive, in the absence of evidence that any act or omission of defendant caused the runaway."

It appears clear, therefore, that the Circuit Judge was right in directing a verdict for the defendant, and that the judgment should be affirmed.   It is so ordered.

Mr. Justice Marion concurs.

Mr. Justice Watts concurs in the result.

Mr. Justice Fraser (dissenting): This is an action for damages for death by wrongful act.   At the close of plain-

tiff's testimony, the defendant moved for a non-suit. The trial Judge granted the motion and made the following order:

"It appearing that the only reasonable inference to be drawn from the testimony offered by the plaintiff in the above cause is that the injuries complained of were the result of the negligence of the person in charge of plaintiff's intestate, and that negligence on the part of the plaintiff's intestate was the proximate cause of said injuries, now, on the motion of Harley & Blatt and R. P. Searson, Esqrs., attorneys for the defendant, Seaboard Air Line Railway, it is ordered that a non-suit in the said cause be, and the same is hereby, granted upon the grounds set forth in the record, and that the complaint be dismissed with costs."

From this order the plaintiff appealed, and his appeal must be sustained. More than one inference can be drawn from the testimony. What was the proximate cause of the injury was a question for the jury. It is improper to discuss the facts, as a new trial must be ordered.

The judgment should be reversed, and a new trial ordered.

MR. CHIEF JUSTICE GARY concurs.