13424

BEARD v. CABANISS

(164 S. E., 441)

174

*Messrs. Williams, Croft & Busbee,* for appellant,

*Messrs. J. S. Bussey, Jr.,* and *Henderson & Salley,* for respondent,

June 10, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This suit, instituted in the Court of Common Pleas for Aiken County, is an action for the recovery of damages against the defendant for personal injuries suffered by the plaintiff, caused by the defendant's automobile striking the plaintiff, on the Augusta-Aiken State Highway, at· Clearwater, S. C., in the said County of Aiken, December 21, 1929. Issues being joined, the case was tried at the March, 1931, term of said Court before Judge C. C. Featherstone, and a jury, resulting in a verdict for the defendant, directed by the trial Judge on motion of the defendant. From the judgment entered on the verdict, thus directed, the plaintiff has appealed to this Court. The facts in the case necessary for an understanding of the questions raised on appeal, briefly stated are as follows:

It appears from the record that the plaintiff, at the time of receiving the injuries mentioned, held the position of deputy sheriff in the said County of Aiken, and was located at the said village of Clearwater, an unincorporated town, and, as such officer, it was his duty to keep the peace and good order at said place. At the place and time mentioned, December 21, 1929, in the early part of the night, a collision occurred between the cars of one Beck and one Price, and in performance of his duty, as deputy sheriff, the plaintiff went to the scene of the collision for the purpose of keeping the peace and good order of the place. In order to accomplish this end and prevent the blocking of traffic, which was very heavy at this point, many cars passing in each direction every minute, a passageway, affording ample room, was provided between the said wrecked cars of Beck and Price for the passage of automobiles driven over and by the said place. For the purpose of promoting the traffic, keeping the cars moving, and to guard against accidents, as the cars approached they were signaled to pass on, and while standing at the said place, on the edge of the road, for the aforesaid purpose and in performance of his duty as deputy sheriff, the plaintiff was struck by defendant's automobile and was painfully and

seriously injured. The specific allegations of negligence and as causing the injury to the plaintiff are set forth in the plaintiff's complaint as follows:

"The defendant approached the scene aforesaid in his car and although directed to pass on, negligently, wilfully and out of reckless disregard for the rights of the plaintiff suddenly stopped in front of moving traffic without warning, and when another car from the rear struck his car, the defendant in said manner failed to steer and run his car along said passageway provided for cars to pass, and, on the contrary, in said manner, steered and ran his car directly into and upon this plaintiff, who was outside of said passageway and who was out of danger's way had defendant pursued the way and mode of travel provided for him and all others, or exercised the slightest degree of diligence, thereby striking him violently and throwing him to the pavement, breaking one of his legs so badly as to shatter the bone and cutting him about the head and otherwise injuring him about the body, thereby causing to undergo medical and surgical treatment and to incur doctor's and hospital bills and to lose time, and inflicting upon him a painful and permanent injury to his leg, he having ever since been on crutches and having ever since suffered great mental and physical pain, all to his great damage in the sum of Two Thousand, Nine Hundred Ninety-five and no/100 ($2,995.00) Dollars."

The defendant admitted the formal allegations of the complaint, and, also, admitted that the plaintiff received some injury, at the time and place alleged, by being struck by defendant's automobile, but specifically denied that the injury was in any way caused by the acts of the defendant or that he was, in any way, responsible for the same or that he was guilty of any negligence, willfulness, wantonness, or recklessness in connection therewith. In stating his version of the manner in which the injury to the plaintiff occurred, the defendant in his answer made this allegation:

" * * * This defendant alleges that on about the 21st of December, 1929, while he was traveling in an easterly direction on said highway, going from Augusta to the Town of Graniteville, proceeding in a careful and prudent manner, when he reached the Town of Clearwater he came upon the scene where the said wreck and collision had occurred, and a considerable crowd had gathered at the place of the collision. Seeing the crowd in the road, this defendant slowed up his car to a very moderate rate of speed, and approached said crowd in a very careful manner with his car completely under control, and when he got very near the crowd he was signalled to stop by one of the traffic officers directing traffic at the place, using a flashlight. That he proceeded to stop his car upon said signal, and just about the time he was stopping his car another car being operated by one Louis Gibson coming up from the defendant's rear and running at a high, negligent, willful, reckless and wanton rate of speed, without keeping a proper lookout, without proper brakes thereon, and in violation of the rules of the road and the statutory and common law of this State, suddenly and without warning struck this defendant's car, knocking it several feet into the crowd, and out of control of this defendant, thereby striking the plaintiff and inflicting upon him the injuries which he suffered in said collision as the sole and proximate cause thereof. * * * "

The defendant further alleged that the injuries suffered by the plaintiff were caused by the negligent, willful, wanton and reckless acts of the plaintiff "in placing himself in a dangerous position, and in not keeping a proper look-out for approaching and passing cars, and in not observing due care for his own safety." The defendant also interposed the plea of contributory negligence and contributory willfulness as being the cause of the plaintiff's alleged injury, and further alleged that, if the plaintiff's injuries were not caused in the manner above set forth, then the said injuries "were due

to an accident pure and simple," for which the defendant contends he was not liable.

The attorneys for appellant and respondent agree that the following are the questions raised by the exceptions for the Court's consideration:

"1. Was there any evidence of negligence, willfulness or recklessness on the part of the defendant sufficient to warrant a verdict against him for either actual or punitive damages?

"2. Can any other than the following inference be drawn from the testimony: that plaintiff's injury was brought about by the intervening negligence of a third person, and defendant's negligence, if any, was not the proximate cause of plaintiff's injury?"

His Honor, the trial Judge, in granting defendant's motion for direction of a verdict, answered both of these questions in favor of the defendant, holding, in effect, that there was no evidence of willfulness or simple negligence on the part of the defendant upon which to base a verdict for punitive or actual damages, and, further, that the proximate cause of plaintiff's injury was an independent third cause which the defendant could not have foreseen, in that, when the defendant slowed his automobile in compliance with a signal given by an officer of the law, a man by the name of Gibson, who was in the rear of the defendant and going in the same direction as defendant and traveling at a rapid rate of speed, struck defendant's car, without warning, and threw it with great force against the plaintiff, thereby injuring the plaintiff without any negligence or wrongdoing on the part of the defendant.

Since, under our view, the case will have to be remanded for a new trial, we shall avoid a general discussion of the evidence, and make only a brief reference to the same.

We agree with the trial Judge as to his conclusion regarding punitive damages, and think that, under the testimony disclosed by the record, the direction of a verdict in this respect was right and proper, but we

think his Honor was in error as to the other issues set forth in the questions raised by the exceptions. According to our view of the case, the testimony bearing on the issues presented by the appeal was susceptible of more than one reasonable inference, and therefore should have been submitted to the jury as to said issues.

As to the questions of negligence on the part of defendant, there was testimony tending to show that the defendant approached the place in question at a rapid rate of speed and came to a sudden stop, and also to the effect that the traffic was heavy at this place. In this connection we quote herewith the following testimony of the witness, M. M. Mitchell, who testified on behalf of the plaintiff: "I live in Bath. Have been there for about twelve months, I guess. I have been living in the valley all of my life. I recall the collision in which Mr. Beard was injured. I went down there with Mr. Beard. We were on the store porch at Clearwater when the first wreck happened, and we went down there, and had it about cleared up, and this other fellow (defendant) came in there running very fast and Gibson ran into him. This other fellow came running very fast and stopped. Cabaniss was driving the Ford, I believe. He stopped all of a sudden. The car behind struck him and he struck Mr. Beard. There was room for him to go through, every other car had gone through, and he stopped. They took Mr. Beard off before I saw him. Nobody flagged this man. I was with Mr. Fallaw. He had a flashlight, but he was pulling them on through with it."

On this point the plaintiff testified as to a conversation the defendant had with him, as follows: "Q. Mr. Beard, when Mr. Cabaniss was on the stand I asked him if he didn't say in substance to you or words to the effect that the cause of the accident was his stopping suddenly? A. Yes, sir; he told me that. Unthoughtedly, he said. He said he stopped to see if he could be of any assistance."

There was also testimony from which it might reasonably be inferred that the signal given to the defendant by the of-

ficer, by waving his flashlight, was to slow down and then move on; that the defendant did not obey such signal, but, instead of slowing down, as he approached the place of the wreck at a rapid rate of speed, came to a sudden stop, and immediately following his sudden stop, the car coming from his rear struck his car.

In our opinion, it might be reasonably inferred that the above-named acts caused the alleged injuries to the plaintiff, if the testimony as to the same is true, and that is a jury question. In this connection we call attention to the fact that there was other testimony adduced at the trial of the case, some of which strongly supported the view of the trial Judge, which testimony we have not discussed herein for the reason that, in passing upon the issues raised in the appeal, regarding the action of the trial Judge in granting defendant's motion for direction of a verdict, the testimony must be considered in the most favorable light for the plaintiff, but considering the record as a whole, we think that it is clear that more than one reasonable inference can be drawn from the testimony applicable to the issues involved, and for that reason think the same should have been submitted to the jury. Of course, if the intervening third cause, the sudden striking of defendant's car by Gibson's car, to which reference has been made, was the proximate cause of the plaintiff's injury, as such third intervening cause, the plaintiff is not entitled to recover, but in this connection we call attention to the well-recognized rule as expressed in the opinion in the case of *Keel, Adm'r, v. Seaboard Air Line Ry.,* 122 S. C., 17, 114 S. E., 761, 763: "The law of proximate cause requires an unbroken sequence between the prime act of negligence and the injury; and when it appears that an active cause intervened between the prime act and the injury, producing the injury, the prime act will not be deemed the proximate cause *unless it appears that the intervening act was itself a result reasonably to have been expected from the prime act, in which case the connection be-*

*tween the prime act and the injury is maintained—the sequence is not broken."* (Italics added.)

The exceptions are therefore sustained, and it is the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM and CIRCUIT JUDGE J. HENRY JOHNSON concur.