BERLIN v. CHICAGO & NORTH WESTERN RAILWAY CO.

1. RAILROADS—NO RIGHT TO WANTONLY INJURE TRESPASSER.
   Railroad company's servants would have no right wantonly and recklessly to injure nine-year old boy who was trespasser on right of way.

2. SAME—NEGLIGENCE—TRESPASSER—NO DUTY TO STOP TRAIN.
   There was no duty on part of railroad company to stop its train when crew saw nine-year old boy trespassing on its right of way running toward track.

3. SAME—NO DUTY TO KEEP TRACKS SAFE FOR PLAYGROUND.
   Railroad company is not bound to keep its tracks safe as playground for trespassing children, or to move its cars with reference to their caprice or pleasure.

4. SAME—INFANTS—BOY RUNNING TOWARD TRACK.
   Engineer seeing nine-year old boy running toward track would be justified in believing that he would not run into side of train or stay where he would be likely to be injured.

5. SAME—CONTRIBUTORY NEGLIGENCE—SUBSEQUENT NEGLIGENCE.
   Nine-year old boy, who was trespasser on railroad right of way, and who was injured by passing train by reason of his own contributory negligence, was not entitled to recover, in absence of proof of wanton or wilful misconduct on part of train crew or of subsequent negligence on their part.

Appeal from Gogebic; Driscoll (George O.), J. Submitted October 28, 1932. (Docket No. 76, Calendar No. 36,769.) Decided January 3, 1933.

Case by Clarence Berlin, by next friend, against Chicago & North Western Railway Company for personal injuries alleged to have been due to defendant's negligence. Verdict and judgment for

As to duty of railroad company to trespassing children, see annotation in 25 L. R. A. 784; 6 L. R. A. (N. S.) 283; 32 L. R. A. (N. S.) 569.

As to contributory negligence of children on or about railroad tracks, see annotation in L. R. A. 1917F, 123.

plaintiff. Defendant appeals. Reversed, and judgment ordered entered for defendant.

*Edward W. Massie,* for plaintiff.

*Ryall & Frost (Waples & Waples, M. E. Nolan,* and *Robert A. Burns,* of counsel), for defendant.

POTTER, J. Plaintiff, by next friend, sued and recovered judgment against defendant for personal injuries alleged to have resulted from defendant's negligence. Defendant appeals.

The defendant's railway tracks run through the city of Ironwood. The train which caused plaintiff's injuries consisted of an engine, caboose, and 52 ore cars. It was going in a westerly direction, at a slow rate of speed, upgrade. It whistled for the country club crossing. Plaintiff, then about 9 years of age, Quentin Minkin, then 7½ years of age, and Mat Korpela, then 10½ years of age, were playing with other children in a pasture field near defendant's right of way, picking wild cherries. Defendant's right of way was separated from the pasture by a fence, under which were holes through which children passed to defendant's right of way. Plaintiff's injury occurred August 31, 1925. Suit was instituted February 24, 1931. It is the claim of plaintiff that when the train first whistled, Quentin Minkin went under the fence and ran toward defendant's tracks, and plaintiff immediately followed him. Defendant's tracks opposite this pasture run through a cut near where the injury occurred. Westerly from the point of plaintiff's injury, the tracks of defendant cross the Newport road. Plaintiff was not struck by the engine, but by something at a point east of the Newport road; it being uncertain from the testimony just what part of defend-

ant's train hit plaintiff. Plaintiff describes the occurrences of that day as follows:

"*Q.* Now, you tell the jury how this thing happened, as you remember it, what you remember of it, Clarence.

"*A.* We were picking cherries by my father's land. Quentin saw a train coming.

"*Q.* What did Quentin do?

"*A.* He run on the track.

"*Q.* How far was the train from Quentin? Where was the train when Quentin ran out on the track?

"*A.* It was coming around that curve.

"*Q.* How far is that curve from the place where you were picking cherries, Clarence; do you know what distance?

"*A.* I can't remember.

"*Q.* Do you know?

"*A.* No.

"*Q.* When you saw Quentin run out on the track what did you do?

"*A.* I run after him.

"*Q.* What happened, Clarence?

"*A.* I was on the track and something hit me in the head.

"*Q.* Do you remember anything after that? (No answer.)

"*Q.* Do you remember whether the train did anything at that time?

"*A.* No."

It was the claim of his counsel plaintiff followed Quentin Minkin through the fence toward defendant's track for the purpose of getting Quentin off defendant's tracks. It is not claimed Quentin was between the rails of defendant's tracks nor that plaintiff was. He did not remember that he got to the railroad track in time to pull Quentin off the track or that he touched him. Quentin seems to

have been able to take care of himself. Plaintiff, when alongside defendant's train, was struck, knocked down, and his arm cut off. Whether he was seeking to follow Quentin, run alongside the train, or board it, he was either hit by the cars or stumbled against the train, was knocked down and injured. There was the usual testimony of hospitalization and doctors' bills. At the conclusion of plaintiff's testimony, defendant moved for a directed verdict on the ground defendant's negligence was not shown and plaintiff was guilty of contributory negligence. We think this motion should have been granted. There was no proof defendant's train was negligently operated; that those in charge of defendant's train saw plaintiff on its tracks; no duty on the part of the defendant to stop its train if the train crew saw plaintiff was running towards the track; no proof of wanton or wilful misconduct on the part of defendant's operatives or of subsequent negligence on their part. It is undoubtedly the rule that defendant's servants would have no right wantonly and recklessly to injure plaintiff. The hole under the fence, through which plaintiff passed on defendant's right of way, had no causal connection with plaintiff's injury. When plaintiff entered the right of way of defendant he became a trespasser. A railroad company is not bound to keep its tracks safe as a playground for trespassing children, or move its cars with reference to their caprice or pleasure. Even if the engineer saw plaintiff, he would be justified in believing he would not run into the side of defendant's train or stay upon its track where he would be likely to be injured, and that in the exercise of intelligence plaintiff would step off the track. 52 C. J. pp. 557, 562; 3 Elliott on Railroads (2d Ed.), §§ 1259, 1260; *Trudell* v. *Rail-*

*way Co.,* 126 Mich. 73 (53 L. R. A. 271). There was no proof of defendant's negligence. Plaintiff would not have been injured but for his own contributory negligence.

Judgment reversed, with costs. Cause remanded, with directions to enter judgment for defendant.

MCDONALD, C. J., and CLARK, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.