BACKER, Respondent, v. CHICAGO AND NORTH
WESTERN RY. CO., et al, Appellants

(4 N. W.2d 853.)

(File No. 8460.   Opinion filed July 20, 1942.)

Rehearing Denied August 29, 1942

**Churchill & Churchill,** of Huron, for Appellants.

**Williams & Sweet** and **George Williams,** all of Rapid Rapid City, for Respondent.

WARREN, J.   Plaintiff a boy eight years and ten months old, a strong, alert, bright and intelligent boy possessed of all his faculties, familiar with the surroundings and the short cut across the railroad right-of-way and knowing the danger, attempted to cross defendant's railroad tracks.   He ran, stumbled and came in contact with a box car of a "slow moving" freight train of twenty cars; fell under the car and his leg was cut off a few inches below the knee.

The evidence discloses the following physical appearance and surroundings in the locality at the time of the accident.   The defendant railway enters Rapid City from the northeast.   It passes through a cut in certain high ground.   This cut is approximately 2000 feet long, 25 feet wide at the bottom and 80 feet across at the top of the deepest part.   It is approximately 18 feet deep at the ridge. Drainage is provided for by a built-up rise of one and one-half feet of the track.   From the bottom of the cut to the top of the rails is two feet.   A pedestrian approaching the

track travels a distance of some eight or nine feet from the side-wall to the track in the depression forming the drainage bed. The edge at the bottom slope of the cut does not continue nearer than some eight or nine feet of the track. The evidence discloses that the ordinary freight car is 13½ feet high from the top of the rails. It would seem that for a short distance the top of a box car in trains is below the level of the top of the cut. There is a path crossing the railway at the deepest point of the cut. The slopes of the cut at this path are steep, to-wit: thirty-one and one-half degrees. The angle at which the path descends at is twenty-eight or twenty-nine degrees. The soil is partly hard gumbo, loose shale and stone. The footing is therefore insecure. Some 60 feet north from the north edge of the cut is a permanent snow fence. On the south side of the track and to the east of where the accident took place there is a row of tourist cabins, one of which is located only 35 feet from the cut.

The plaintiff and several other children live northwest of the cut. Some twenty-five or thirty-five of them attended the Roosevelt school and had for a considerable time crossed the track over a path at the deepest point of the cut. It would seem that the high tight snow fence was ineffectual to stop the children from using this path in going to and from school. The plaintiff had used and traveled over this path for some two and one-half years. It would appear from the evidence that it was not necessary for the plaintiff and other children to use this path in order to go and return from school. At noon, October 18, 1939, the plaintiff and two other boys started for home across the track. After crossing the highway they started to run toward the track. The two boys with the plaintiff when nearing the edge of the cut slowed down and stopped. The plaintiff kept on at full speed over the edge and down the bank and into the side of the westbound freight train where he suffered an injury to his left leg, it being cut off four and one-half inches below the knee. From where the plaintiff was moving it was not an approaching train but what may be termed as a passing train. The train was about twenty cars or a

thousand feet long. The accident occurred toward the rear half of the train. The train was slowing down at the time of the accident so that it stopped in less than 700 feet. It was noon, clear weather, the height of day light. This thousand foot train was directly in front and visible both to the right and left of the plaintiff. Taking into consideration the height of the plaintiff, he could begin to see the train approximately 50 feet back from the edge of the cut. At the close of the evidence the defendants moved for a directed verdict which was denied. The jury returned a verdict for the plaintiff. Thereafter defendants made a motion for judgment nothwithstanding the verdict. An appeal from the judgment and the whole thereof was perfected within due time.

Appellants discuss under one point the assignments of error. They urge that all the evidence does not establish a cause of action against the defendant as it did not prove that defendants had failed to perform any legal duty they owed to the respondent.

Respondent contends that all the allegations of his complaint have been proved; that certain rules in negligence are not applicable; that as an infant of tender years, he is not to be judged by the same rules which govern an adult and that it was within the province of the jury to find that he was of insufficient maturity and capacity to realize or appreciate the danger existing at the place and time he was injured; that there was unusual circumstances and peculiar and highly dangerous conditions which existed at and near the footpath crossing at the time of his injury and that it was an extra hazardous crossing and that, further, due to the knowledge of appellants, that small school children habitually crossed at this point, the appellants were bound to exercise reasonable care and precaution in the operation of its trains and give some warning when approaching the footpath crossing so as to avoid injuring others.

The appellants contend that they are not guilty of any actionable negligence whatsoever and insist that respondent did not meet the burden of proof to such an extent that the issues could be presented to the jury. We are

rather inclined to accept the appellant's contention that the respondent by his evidence failed to show actionable negligence.

The respondent contends that the train was entirely obscured from view by a deep cut and that it can not be seen until one gets within about 50 feet of the crossing. He further states in substance: that positively no whistle, bell or other warning was given as train approached crossing; steep dangerous banks on either side of cut; tourist cabins obstruct the view. These facts made an extra hazardous condition which appellants well knew.

The evidence is undisputed that the respondent had a clear view of the moving train when back 50 feet from the edge of the cut. Under many authorities a moving train in plain sight is in itself warning. Respondent's testimony indicates that he continued running toward the moving train so even though there was a failure to give signals from the train such failure would not constitute negligence by the appellants as there was sufficient warning by the moving train just in front of respondent. This is not a case of an approaching train where the signals which the respondent complains of were not given and could have more effectively warned the respondent against the presence and danger of the passing train directly ahead of him.

Appellants and respondent have furnished this court with a large number of authorities from our own state and many other appellate courts. We have attempted to reconcile and apply the cases cited and others that have come to our attention from investigation to the facts and issues here involved.

In the case of Dean v. Chicago, Rock Island & Pacific Railway Co., 51 S. D. 233, 213 N. W. 6, and Buboltz v. Chicago, M. & St. P. Ry. Co., 47 S. D. 512, 199 N. W. 782, this court covered at length the duties of operators of trains in approaching a railroad crossing. In the instant case the moving train passing in front of respondent was adequate warning. In Crosby et al. v. Great Northern Railway Co., 187 Minn. 263, 268, 245 N. W. 31, 32, the court held and we quote: "Subject to legislative restriction, which is not here

violated, it is not negligence in itself for a railroad company to allow a train of cars to stand on a highway crossing, **or to move thereon.**" (Emphasis supplied.) We have omitted for sake of brevity the authorities compiled and cited. This case is cited and quoted from as an authority in Bowers v. Great Northern Railway Co., 65 N. D. 384, 259 N. W. 99, 99 A. L. R. 1443, with annotations page 1454. The requirements in SDC 52.0924 for signals and warnings to be given by operators of trains approaching highway crossings are solely for the benefit of travelers on the highway so as to warn them of approaching trains. Those signals become immaterial when the train is actually standing upon or moving in front of the approaching traveler. Rhine v. Duluth, M. & I. R. Ry. Co., 210 Minn. 281, 297 N. W. 852. The requirements for such signals and warnings to such crossings are not for the purpose of saving from injury drivers or pedestrians running into the side of standing or moving trains. Stahl v. Lake Shore & M. S. Ry. Co., 117 Mich. 273, 75 N. W. 629, 630, holds: "A liability attaches only when the injury results from the negligence. [Houston & T. C.] Railway Co. v. Wilson, 60 Tex. 142. And recovery for an omission to give proper signals cannot be had in any case where the traveler approaching the crossing has, by any means, timely notice of the approach of the train. State v. Baltimore & O. R. Co., 69 Md. 339, 14 A. 685, 688; [Chicago, R. I. & P.] Railroad Co. v. Houston, 95 U. S. 697 [24 L. Ed. 542]; Pakalinsky v. [New York Cent. & H.] Railroad Co., 82 N. Y. 424; 3 Elliott, R. R. § 1158." Judson v. Great Northern Ry. Co., 63 Minn. 248, 65 N. W. 447; Rowe v. Chicago, Milwaukee & St. Paul Railway Co., 144 Iowa 378, 122 N. W. 929; Artz v. Chicago, R. I. & P. R. Co., 34 Iowa 153.

We do not believe that if the respondent had been discovered that the appellants could have by any act of warning or manipulation of the train saved him from injury.

■■ In Berlin v. Chicago & N. W. Ry. Co., 261 Mich. 479, 246 N. W. 191, 192, the court held and we quote: "A railroad company is not bound to keep its tracks safe as a playground for trespassing children or move its cars with reference to their caprice or pleasure. Even if the engineer

saw plaintiff, he would be justified in believing he would not run into the side of defendant's train or stay upon its track where he would be likely to be injured, and that in the exercise of intelligence plaintiff would step off the track. 52 C. J. 557, 562. Elliott on Railroads (2d Ed.) Par. 1259, 1260. Trudell v. Grand Trunk Ry. Co., 126 Mich. 73, 85 N. W. 250, 53 L. R. A. 271. There was no proof of defendant's negligence. Plaintiff would not have been injured but for his own contributory negligence."

In Davis v. Keller, 85 Ind. App. 9, 150 N. E. 70, 73, the court in passing upon the duties a railway company owes to a six-year-old child and passing upon the failure to sound a whistle or ring a bell when the youth knew of the presence of the train, said: "Appellant was not required to anticipate that appellee would go from a place of safety to a place of danger as the train passed." We are of the opinion from the examination of the evidence that it warrants our holding that the train was in plain sight and that to say, that because of certain warnings such as blowing a whistle or ringing a bell would have placed the respondent on his guard, is too uncertain to furnish the basis for submission of the case to the jury. Nothing has been pointed out in the record which in our opinion discloses a failure of the observance of a duty to the respondent which would charge the appellants with actionable negligence, Torbet v. F. W. Woolworth Co., 59 S. D. 47, 238 N. W. 140; Anderson v. Chicago & N. W. Ry. Co., 59 S. D. 543, 241 N. W. 516, and Marinko v. Chicago, M., St. P. & P. Ry. Co., 63 S. D. 256, 257 N. W. 639, 641. In Marinko v. Chicago, M., St. P. & P. Ry. Co., supra, this court considered the evidence as to actionable negligence and we quote: "Well-considered authorities indicate that to establish actionable negligence plaintiff must show that there was a failure to exercise proper care in the performance of some legal duty and that such negligent breach was the proximate cause of the injury. This the respondent did not do. Whitt v. Rand et al., 187 N. C. 805, 123 S. E. 84. In other words, actionable negligence is negligence to a particular person injured and to warrant recovery it must be alleged and proved that the appellant either act-

ed negligently or negligently refrained from acting to the injury of a particular individual to whom it owed a duty. State v. Consolidated Gas, Electric Light & P. Co. of Baltimore, 146 Md. 390, 126 A. 105, 42 A.L.R. 1237."

We believe that the record conclusively shows that there was no negligence upon the part of the appellant or was there any careless performance of the legal duty or disregard of such duty established by the respondent against the appellant which entitled him to have the court submit fact questions to the jury.

■ Appellants moved for a directed verdict at the close of the evidence and after the verdict had been rendered they moved for a judgment notwithstanding the verdict. This should have been granted.

The judgment appealed from is reversed with direction to enter judgment for defendant notwithstanding the verdict.

All the Judges concur.