TOMES *v.* DETROIT, TOLEDO & IRONTON RAILROAD CO.

1. RAILROADS — NEGLIGENCE — GROSS NEGLIGENCE — LAST CLEAR CHANCE.

In an action for the death of plaintiff's decedent, a high school student nearly 14 years old, killed by defendant's train at a public crossing, where plaintiff's evidence showed that the girl stepped on the track when the train was only 50 feet away, and there was no evidence that the engineer or fireman saw her approaching, there was no proof of last clear chance, discovered or gross negligence on the part of defendant; especially in view of the fact that, even had they seen her, there is no presumption that she would go upon the track with the oncoming train close by and in plain view.

2. SAME—DUTY OF ENGINEER WHO SEES PEDESTRIAN APPROACHING CROSSING.

An engineer who sees a normal girl about 14 years of age approaching a crossing is not guilty of negligence merely

¹Railroads, 33 Cyc. p. 1096 (Anno); 1 A. L. R. 203; 41 A. L. R. 405; 22 R. C. L. 1034 *et seq.;* 3 R. C. L. Supp. 1301; 6 R. C. L. Supp. 1348; ²Id., 33 Cyc. pp. 979, 980.

because he fails to stop or gain complete control of his train, since such person would not ordinarily be in any peril.

3. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

> A high school girl of about 14 years of age, who, without looking, walked upon a railroad track at a public crossing when the train was in full view and only 50 feet away, and was killed, was guilty of contributory negligence as a matter of law, precluding recovery for her death.

Error to Wayne; Moynihan (Joseph A.), J.  Submitted October 19, 1926.  (Docket No. 32.)  Decided October 3, 1927.

Case by Stif Tomes, administrator of the estate of Stella Tomes, deceased, against the Detroit, Toledo & Ironton Railroad Company for the alleged negligent killing of plaintiff's decedent.  Judgment for defendant on a directed verdict.  Plaintiff brings error. Affirmed.

*Bigelow & Rankin,* for appellant.

*Clifford B. Longley, Wallace R. Middleton,* and *O. Z. Ide,* for appellee.

STEERE, J.  This is a railroad crossing accident case brought by plaintiff as administrator of the estate of Stella Tomes to recover from defendant damages for her death caused through being struck by a locomotive of defendant while she was walking across its track on an easterly and westerly highway in the city of Wyandotte, Wayne county, called the Goddard road. From a directed verdict in defendant's favor plaintiff appeals by writ of error.

Upon trial of the case defendant introduced no testimony, but at the close of plaintiff's proofs moved for a directed verdict on the ground that deceased was

³Railroads, 33 Cyc. pp. 993, 1115, 1127; L. R. A. 1917F, 125; 22 R. C. L. 1017; 3 R. C. L. Supp. 1299.

shown to be guilty of contributory negligence which precluded recovery. The accident occurred on January 26, 1923, about 4 o'clock in the afternoon, at a point upon the Goddard road where a railroad right of way crosses it, running northerly and southerly to and from the city of Detroit. There are four closely adjoining tracks upon that right of way belonging to three separate lines, defendant's track being the easterly one. When the fatal accident befell her, Stella Tomes was a healthy, intelligent girl, 13 years and 11 months old. She lived with her father and stepmother on the Goddard road a block and a half west of the railroad crossing, was attending the Labadie school located about two blocks east of the crossing, and had passed the 9-A grade. She attended school that day and was walking west towards home along the north sidewalk of Goddard road and just crossing defendant's track when struck by a south-bound locomotive drawing a caboose. The last obstruction to her view northerly along this right of way as she approached the track from the east was the residence of a policeman named Tatrow, who testified his house was some 60 to 63 feet east of defendant's track.

Plaintiff's testimony discloses two eyewitnesses to the accident, but one of whom, a youth named Arthur Deckert, was sworn as a witness. He was then 16 years of age, a resident in that neighborhood, and knew deceased by sight and name. He testified that at the time of the accident he was walking with a companion named Perry westward on the north sidewalk of Goddard road about 10 feet behind deceased. As they neared the railroad crossing he looked up and saw defendant's train, or locomotive, coming from the north, and but about 50 feet from where deceased was just crossing its track. He "grabbed" or "called" his companion Perry "to look," and "hollered" to her at the same time. At that instant, "not a couple of seconds," he saw the locomotive strike and throw her

into the air clear across Goddard road to the south, where she lay on the west side of the roadbed some 60 feet or more from where she was struck. He did not see the engineer or fireman of the locomotive, but saw a man on the back of the passing caboose and hollered to him to stop, and says, "but he just waved back at me, thought it was a joke or something," and the train did not stop or "slack down." ' His testimony that he was within 10 feet of the crossing when he first saw defendant's train and the practically simultaneous accident is in probative force neutralized both by the testimony of Tatrow and his own later statement, "at the time of the accident I had gone about five or ten feet, I imagine, beyond Tatrow's house. I don't know as a matter of fact how far that home is from the track; not as much as 60 feet; I never measured it." He could not tell what first attracted his attention to the situation, but thought it was "the rumbling of the train." He had observed that all the time he was walking behind Stella towards the crossing "she kept walking; she did not stop at any time." When aroused to notice her going without stopping across defendant's track in front of its closely approaching train, he also noticed a south-bound Michigan Central train on its own track west of defendant's crossing the Goddard road, "running in the same direction; they parallel each other across that road." Immediately after he hollered at Stella to look out and the train struck her, his companion, Perry, ran over to Tatrow's house and called him. The latter was at home, off duty, lying down. He hastened over to where deceased lay, called help, secured the service of a passing automobile and promptly took her to a hospital. She was dead when they reached there. Whether death was instantaneous or she survived for a short time as claimed by plaintiff is immaterial to the issue before us.

Plaintiff's alleged grounds of negligence are failure to sound the required crossing signals, excessive speed in violation of a city ordinance, alleged as wanton and gross negligence.   Deckert was the only witness who was directly interrogated or testified on those subjects.

Neither he nor any other witness testified as to whether or not any locomotive bell was rung.   No questions were asked as to that statutory requirement. Deckert testified that he heard the whistle of the Michigan Central train, and, when asked if any crossing whistle was blown by defendant, he said:

"I could not swear to it; I did not hear any.

"*Q.* You did not hear any whistle blown by the Detroit, Toledo & Ironton?

"*A.* No, sir.   *   *   *

"(Cross-examination.)

"I said I did not hear any whistle on the D. T. & I.; I was not listening for one, and I do not know as a matter of fact that one was not blown."

On the question of speed at the time of the accident, Deckert was ultimately permitted to express the opinion that defendant's train was going 40 miles an hour. When plaintiff's counsel first attempted, after objection, to show his qualifications as an expert or opinion witness, he replied:

"I drive an automobile; am familiar with speed a little bit, I guess.   *   *   *   I have observed the speed at which I was traveling when I was driving a car; looking at it—yes, when I had a speedometer; from watching a vehicle, I can just imagine about how fast he is going; I could make an estimate—a fair estimate of the speed at which a vehicle is passing me at any time.   *   *   *   I have watched trains going by there. I never made any estimate of the speed at which they were passing that point; I never estimated the speed of automobiles or other vehicles passing any point where I was."

Plaintiff's counsel then abandoned the inquiry, but

on redirect-examination resumed it, and Deckert testified:

"I am familiar with the ordinances and the rate of speed and the regulation of the motor vehicle traffic. I have driven automobiles. I have watched the speedometer to see how fast I was going. I have made comparisons of the speed of my automobile with objects that were passing to know about how fast I was going. * * * I have ridden on trains pretty often; I have watched these trains going by from time to time prior to the time of this accident."

He then was allowed, against renewed objection, to state his opinion that the speed of defendant's train at the time of the accident was "about forty miles an hour." He further replied:

"I never drove a train. I have driven an automobile 40 miles an hour. I have made test as to the speed of objects when I was standing on the ground, watching them go by; but I did not measure their speed or anything of that character."

Defendant's motion to strike out his opinion testimony was denied.

The claim of gross negligence is apparently based on failure of defendant's engineer to observe that deceased was in a place of danger, and after so discovering to make proper effort to avoid the accident.

This case contains no proof of last clear chance, discovered or gross negligence on the part of defendant. Under plaintiff's own testimony deceased must have stepped on the track not over two seconds before she was struck, when defendant's engine was but 50 feet from her. There is no proof that the engineer or his fireman even saw her approaching the crossing or as she stepped upon its track, and if they did see her approaching it there would be no presumption that she would go upon the track with the oncoming train close by and in plain view. Deceased was not a little child, but a high school student nearly 14 years old,

intelligent, normal, and familiar with this crossing, its surroundings, conditions, and dangers.   There is no proof of anything in her appearance or conduct suggesting anything abnormal in her appearance or actions as she walked towards the crossing.   The rule as to duty of the engineer and fireman under similar circumstances will be found clearly stated and discussed in *Trudell* v. *Railway Co.*, 126 Mich. 73 (53 L. R. A. 271); *Knickerbocker* v. *Railway Co.*, 167 Mich. 596; *Mollica* v. *Railroad Co.*, 170 Mich. 96, and other cases to which they refer.   In the *Knickerbocker Case,* where the engineer saw a boy 10 years of age closely approaching the crossing on a bicycle, the court covered the situation as follows:

"But it is not negligence—clearly it is not gross negligence—to fail to stop or to fail to gain complete control of a train of cars, merely because persons are seen approaching a track upon a highway on foot, or with vehicles.   Such an approach is not usually evidence of negligence, and such persons are not usually in any peril."

In the instant case deceased had a clear view in the direction the train was approaching while walking over an abundant space in which to have looked and relooked and assured herself before she went upon the track.   She might have stopped with perfect safety within three or four feet of the track.   Under the circumstances shown the engineer would be under no obligations to check or stop his train until there was something manifestly indicating to him that she intended to step upon the track in front of the train regardless of the imminent danger to her.

In passing upon deceased's negligence it is to be borne in mind that it was incumbent upon plaintiff not only to affirmatively establish defendant's negligence, but also to show that deceased was free from contributory negligence.   In the latter requisite plaintiff failed.   The testimony shows deceased was

of sufficient age, intelligence, and experience to fully understand the danger involved in going upon the track directly in front of an approaching train.   No unfamiliar conditions or diverting circumstances are shown to have confused or interfered with the exercise of her normal faculties and powers of observation. The train was running in full view towards the crossing while she was walking over an ample safety zone to have assured and reassured herself as to the situation before she went upon the well known and obvious danger zone.   The overwhelming weight of authority sustains the trial court in holding as a matter of law under the uncontroverted evidence that she was guilty of such contributory negligence as to preclude recovery.   Some of our opinions well in point upon that rule of law, which is more than a mere rule of evidence, are as follows:   *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274; *Mynning* v. *Railroad Co.,* 64 Mich. 93 (8 Am. St. Rep. 804) ; *Kwiotkowski* v. *Railway Co.,* 70 Mich. 549; *Brady* v. *Railroad Co.,* 81 Mich. 616; *Grostick* v. *Railroad Co.,* 90 Mich. 594; *Gardner* v. *Railroad Co.,* 97 Mich. 240; *Phillips* v. *Railway Co.,* 111 Mich. 274 (66 Am. St. Rep. 392) ; *Braley* v. *Railway Co.,* 185 Mich. 606; *Gillett* v. *Traction Co.,* 205 Mich. 410; *Stahl* v. *Railroad Co.,* 227 Mich. 469; *West* v. *Railroad,* 229 Mich. 590.

The recent case of *Stahl* v. *Railroad Co., supra,* involved the accidental death of a young girl 7½ years of age resulting from her going upon a railway crossing in front of an approaching train.   The proofs tended to show that she was killed by a train running over 40 miles an hour.   In approaching the crossing she was shown to have a clear view in the direction the train was coming of 200 feet when within from 12 to 18 feet of the track.   She ran upon the track without stopping, looking, or listening.   The opinion in that case affirming a directed verdict for defendant

because of contributory negligence which precluded recovery concludes with the following reflection, equally applicable to the instant case:

"The fact that it was a regrettable and distressing accident cannot alter the law."

The judgment of the trial court must stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.