RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID AYERS,

*Plaintiff-Appellee,*

*v.*

CITY OF CLEVELAND,

*Defendant,*

MICHAEL CIPO and DENISE KOVACH, Cleveland Police Detectives,

*Defendants-Appellants.*

No. 13-3413

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cv-00753—James S. Gwin, District Judge.

Decided and Filed: December 2, 2014

Before: BATCHELDER, GILMAN, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Joseph F. Scott, Jennifer Meyer, CITY OF CLEVELAND, Cleveland, Ohio, for Appellants. Jonathan Loevy, Russell Ainsworth, LOEVY & LOEVY, Chicago, Illinois, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. David Ayers spent 12 years in prison based on a state-court murder conviction that was later overturned. He was freed in 2011 after this court

1

granted his petition for a writ of habeas corpus, finding that the detectives leading the murder investigation—Michael Cipo and Denise Kovach—had violated Ayers's Sixth Amendment right to counsel by using a fellow inmate to induce Ayers to make allegedly incriminating statements without the assistance of counsel.

In 2012, Ayers filed a § 1983 suit against Cipo, Kovach, and other defendants. Ayers alleged, among other things, a *Brady* violation and malicious prosecution. The district court denied Cipo and Kovach's motion for summary judgment on qualified-immunity grounds, and the case proceeded to trial. A jury found in favor of Ayers and awarded him more than $13 million in damages. On appeal, Cipo and Kovach challenge the district court's denial of summary judgment, its denial of their preverdict motion for judgment as a matter of law, the sufficiency of the evidence at trial, and the court's denial of their motion in limine to exclude certain expert testimony.

For the reasons set forth below, we **DECLINE** to address the merits of the qualified-immunity defense, the denial of the preverdict motion for judgment as a matter of law, and the challenge to the sufficiency of the evidence at trial because those arguments have been procedurally forfeited, and we otherwise **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.    Factual background**

### 1. The murder of Dorothy Brown

At approximately 2:45 p.m. on December 17, 1999, 76-year-old Dorothy Brown was found murdered in her apartment in the LaRonde apartment complex in Cleveland, Ohio. Brown had suffered blunt-trauma injuries to the head. She was found partially clothed, and foreign human pubic hairs were later collected from her mouth. Sarah Harris, a fellow LaRonde resident, discovered Brown's body when she went to check on Brown that afternoon.

The LaRonde apartment complex, owned and managed by the Cuyahoga Metropolitan Housing Authority (CMHA), primarily serves elderly and disabled residents. Ayers, although neither elderly nor disabled, was a resident of the complex due to his employment by CMHA to provide security as a special police officer.

When the investigating officers arrived at the scene of the murder, Ayers was observed outside of Brown's apartment on the fifth floor of the complex. Ayers recounted for the officers the details of his interactions with Brown and Harris that had occurred approximately 13 hours earlier. He said that he and Harris had gone to Brown's apartment to help Brown off of the floor, where she had fallen and had been unable to get up. Both Ayers and Harris later reported that Brown had called them for help.

### 2. *Cipo and Kovach target Ayers*

Over the next few months, Cleveland police detectives Cipo and Kovach investigated Brown's murder. They first focused their attention on a suspect who had previously been arrested for a sex offense, in part because Brown had been found with no pants on. In the weeks following the murder, however, this suspect could not be found.

At the same time, Cipo and Kovach began focusing on Ayers. A member of the CMHA police performed a "voice stress test" on Ayers in January 2000 and reported to Cipo and Kovach that Ayers "exhibited deception during the test." In February, Cipo and Kovach interrogated Ayers. They also interviewed Ayers's friend, Ken Smith, whom Ayers had spoken to over the phone on the afternoon of the murder. In a statement that he signed in March, Smith said that Ayers called him around 2:00 p.m. on the day of the murder—*before* Brown's body was discovered—and told him that a resident had just died. Cipo and Kovach similarly wrote in a report that Ayers called Smith at 1:54 p.m. and told him about Brown's death before the body was discovered.

But phone records show that Smith was actually the one who called Ayers, not the other way around. Moreover, at trial, "Smith recanted portions of his written statement and testified that Detectives Cipo and Kovach pressured him into stating that Ayers phoned him regarding Brown's death prior to the discovery of her body." *Ayers v. Hudson*, 623 F.3d 301, 306 (6th Cir. 2010).

Cipo and Kovach also obtained Brown's phone records from the evening and early morning preceding her murder, which apparently show no outgoing calls from her phone number during that time. These records directly conflict with Ayers's statement that Brown had called

him at around 2:00 a.m. that morning to request assistance. But they also conflict with statements from five other persons who independently stated that they had received calls from Brown during that same time period. Notwithstanding these witness statements corroborating Ayers's account, Cipo and Kovach believed that Ayers was "lying."

In another report, Kovach wrote that Ayers was "lying again." A CMHA officer had informed Kovach that, contrary to Ayers's account that he went to the lobby to get keys to lock Brown's door after helping her get up from the floor, Ayers did not appear on the lobby's security tape during that time period. Cipo later signed an affidavit for a search warrant swearing that he reviewed the lobby security tape and that "Ayers does not appear at the time stated or thereafter." But Cipo never actually reviewed the tape, which does, in fact, show Ayers in the lobby at the stated time.

Ayers was arrested on March 14, 2000 after being interrogated by Cipo and Kovach that same day. Both detectives later testified that, during the interrogation, Ayers said, "if I say I hit [Brown], can I go home?" Kovach's notes from that day, however, stated only that "[w]e interviewed AYRES [sic] and upon completion, he was booked for this homicide and conveyed to City Jail." The detectives interrogated Ayers yet again two days later. Although Kovach took extensive notes this time, she once again did not mention Ayers's alleged statement from March 14, 2000. A grand jury indicted Ayers on March 27, 2000.

### 3. *Ayers's criminal trial and conviction*

A jury was empaneled on November 22, 2000 after discovery delays caused in significant part by the government's untimely disclosure of evidence. Five days later, the prosecution disclosed for the first time that it intended to call Donald Hutchinson, an inmate who had been assigned to the same jail pod as Ayers. Hutchinson told Cipo and Kovach on November 25, 2000 that Ayers had recently confessed to the murder, and indicated Hutchinson's willingness to testify at Ayers's trial. But Cipo and Kovach's report of the meeting specifically noted Hutchinson's failure to include details about the murder weapon and the amount of money taken from Brown's apartment. They informed Hutchinson that the prosecutor would likely contact him shortly, after which they returned Hutchinson to his jail pod. A short time later, Hutchinson directly questioned Ayers about both details, at which point Ayers allegedly confessed to using a

small, black iron to kill Brown and to stealing $700 from her. The next day, Hutchinson called his wife to ask her to contact the police on his behalf, after which he was placed into protective custody.

The state trial court denied Ayers's motion to suppress Hutchinson's testimony regarding the purported confession. The jury, after initially being deadlocked, eventually returned a guilty verdict against Ayers on all counts. According to this court's subsequent habeas decision, Ayers's conviction was "[b]ased largely on Hutchinson's testimony and Smith's written statement." *Ayers v. Hudson*, 623 F.3d 301, 306 (6th Cir. 2010). The Ohio Court of Appeals, on direct appeal, issued a divided decision to affirm Ayers's convictions but to remand for resentencing. On remand, Ayers was again sentenced to life in prison. The Ohio Supreme Court denied leave to appeal.

### 4. *This court grants Ayers's habeas petition*

In January 2004, Ayers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on four distinct grounds. The district court denied his petition. This court then issued a certificate of appealability on Ayers's claim that the government had violated his Sixth Amendment right to counsel. It found that the government "intentionally created a situation likely to induce Ayers to make incriminating statements without the assistance of counsel when it returned Hutchinson to Ayers' jail pod and he thereafter deliberately elicited information from Ayers." *Id.* at 310 (internal quotation marks, citation, and alterations omitted). On October 5, 2010, the district court was instructed to grant Ayers a conditional writ of habeas corpus, and this court further ordered the state of Ohio to provide Ayers with a new trial within 180 days or to release him. The State elected not to retry Ayers, and he was released from prison on September 12, 2011.

## B. Procedural background

In March 2012, Ayers filed a complaint in the United States District Court for the Northern District of Ohio against Cipo, Kovach, and several other defendants pursuant to 42 U.S.C. § 1983, alleging violations of the United States Constitution and Ohio state law. The complaint contended, among other things, that Cipo and Kovach withheld exculpatory evidence

and fabricated false reports, testimony, and other evidence in violation of Ayers's due-process rights; participated in the malicious prosecution of Ayers; conspired to deprive Ayers of his constitutional rights; and intentionally inflicted emotional distress on Ayers. Ayers filed an amended complaint in July 2012, adding his Sixth Amendment claim.

Cipo and Kovach, along with the City of Cleveland, moved to dismiss the amended complaint in August 2012 for failure to state a claim. With that motion still pending, Cipo and Kovach moved for summary judgment in November 2012 on qualified-immunity grounds. In February 2013, the district court denied Cipo and Kovach's motion to dismiss, and denied in part and granted in part their motion for summary judgment. The court found that Ayers raised genuine issues of material fact with respect to the following claims against Cipo and Kovach: due process, malicious prosecution (both federal and state), Sixth Amendment, conspiracy, and intentional infliction of emotional distress (IIED). Cipo and Kovach did not seek an interlocutory appeal of the district court's denial of their motion for summary judgment.

On March 1, 2013, Cipo and Kovach filed a motion in limine to exclude the testimony and report of Ayers's expert, Karl Reich, who was prepared to testify about DNA testing on trace evidence (i.e., small pieces of evidence left at a crime scene that may be used to identify a suspect). They argued that any testimony regarding trace evidence—and in particular, testimony about tests conducted in 2013—was irrelevant to Ayers's *Brady* claims. Ayers countered that the expert testimony was relevant to prove Ayers's innocence, to demonstrate that the charges were terminated in his favor (which is a necessary element of a malicious-prosecution claim), and to support his claim for damages. The district court subsequently denied the motion in limine and allowed Reich to testify.

A trial on the merits commenced in March 2013. During the trial, the district court granted Ayers's oral motions to dismiss his state-law malicious-prosecution claim, as well as his conspiracy and Sixth Amendment claims. Before the close of evidence, Cipo and Kovach moved for a directed verdict on the federal malicious-prosecution and *Brady* claims without specifying any particular rule of procedure. The district court denied the oral motion, which did not mention qualified immunity. After four days of trial, the jury returned a verdict for Ayers and against Cipo and Kovach on the remaining § 1983 and IIED claims. The jury awarded

Ayers $13,210,000 in compensatory damages.  Post-verdict, the district court granted Cipo and Kovach's unopposed motion under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the jury's verdict by vacating the judgment as to the IIED claim.  The jury award remained unchanged.  Cipo and Kovach did not make a post-verdict motion under either Rule 50(b) or Rule 59 on any other grounds.

On April 5, 2013, Cipo and Kovach filed their notice of appeal from the district court's February 25, 2013 order denying summary judgment and its March 8, 2013 order adopting the jury's verdict.  They make four arguments on appeal: (1) the district court erred in denying summary judgment based on qualified immunity, (2) the district court erred in denying judgment as a matter of law for Cipo and Kovach on the § 1983 malicious-prosecution and *Brady* claims, (3) there was insufficient evidence presented at trial to support the jury verdict, and (4) the district court abused its discretion in denying the motion in limine to exclude Reich's testimony.

## II.  ANALYSIS

### A.    Cipo and Kovach have forfeited their qualified-immunity defense on appeal

In appealing the district court's denial of their motion for summary judgment, Cipo and Kovach argue that the court "incorrectly denied . . . their right to qualified immunity."  But their procedural failures prevent us from considering the qualified-immunity defense.

The Supreme Court has held that a party cannot appeal an order denying summary judgment after a full trial on the merits.  *Ortiz v. Jordan*, 131 S. Ct. 884, 888-89 (2011).  A summary-judgment order "retains its interlocutory character as simply a step along the route to final judgment.  Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion."  *Id.* at 889 (citation omitted). Because of its interlocutory nature, a summary-judgment order ordinarily fails to qualify as a "final decision" subject to appeal.  *Id.* at 891.

There is, however, a narrow exception to the general rule that denials of summary judgment are nonappealable orders: an immediate appeal may be pursued when it presents a purely legal issue.  *In re Amtrust Fin. Corp.*, 694 F.3d 741, 750-51 (6th Cir. 2012) (allowing appellate review of the district court's denial of summary judgment because it was a "pure

question of law"). In the qualified-immunity context, an example of a purely legal issue is the determination of "what law was clearly established" at the time of the officials' conduct. *Ortiz*, 131 S. Ct. at 891 (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)) (internal quotation marks omitted). But immediate appeal is unavailable "when the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Id.*

That is exactly what the district court determined here. It found that Ayers presented sufficient evidence to raise genuine disputes of material fact relating to the *Brady* and malicious-prosecution claims, thereby precluding summary judgment on Cipo and Kovach's qualified-immunity defense. Moreover, Cipo and Kovach did not challenge whether the law on *Brady* or malicious prosecution was clearly established. In any event, even if the denial of summary judgment had turned on a purely legal issue, thus allowing for an immediate appeal, Cipo and Kovach did not seek such an appeal in a timely manner. The district court denied Cipo and Kovach's motion for summary judgment on February 25, 2013, but they did not file their notice of appeal until April 5, 2013 (39 days later). *See* Fed. R. App. P. 4(a)(1)(A) (allowing a maximum of 30 days to appeal).

Nor can Cipo and Kovach otherwise raise their qualified-immunity defense at this point. "A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily." *Ortiz*, 131 S. Ct. at 889. Rather, after summary judgment is denied, the question becomes whether the evidence presented at trial is sufficient to overcome the defense—specifically, whether judgment for Cipo and Kovach may be granted as a matter of law. *See id.* (citing Fed. R. Civ. P. 50(a), (b)). But a party seeking a qualified-immunity defense must continue to urge it during and after trial in order to avoid forfeiting the argument on appeal. *See id.* (holding that the officials' failure to renew their motion for judgment as a matter of law under Rule 50(b) on qualified-immunity grounds "left the appellate forum with no warrant to reject the appraisal of the evidence" by the district judge).

Because Cipo and Kovach failed to raise their qualified-immunity defense in either a Rule 50(a) or Rule 50(b) motion, they have forfeited the defense on appeal. This court held that the qualified-immunity defense was forfeited when faced with a similar procedural posture in *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010). Like the defendants in *Sykes*, Cipo and

Kovach made an oral Rule 50(a) motion, but that motion "failed to provide the required notice" to the court of the qualified-immunity defense. *See id.* The *Sykes* court found dispositive the fact that the Rule 50(a) motion never mentioned "qualified immunity" or other terms associated with that defense (e.g., "clearly established law" or "objectively unreasonable actions") that might have put the court and the plaintiffs on notice as to that particular issue. *Id.*

Raising the defense in a later Rule 50(b) motion—which Cipo and Kovach failed to do here—did not save the defendants in *Sykes. See id.* Neither did resting on the argument made at the summary-judgment stage. *Id.* ("[E]ven if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion." (quoting *Parker v. Gerrish*, 547 F.3d 1, 12 (1st Cir. 2008))). We therefore decline to consider Cipo and Kovach's qualified-immunity defense on appeal.

**B.     Challenges to the district court's denial of judgment as a matter of law and the sufficiency of evidence at trial are also forfeited**

Cipo and Kovach's next arguments—that there was insufficient evidence presented at trial to support the jury's verdict and that the district court erred in denying judgment as a matter of law on the *Brady* and malicious-prosecution claims—also fail for procedural reasons. Here, Cipo and Kovach at least moved for judgment as a matter of law on the *Brady* and malicious-prosecution claims before the close of evidence. The motion was presumably made under Rule 50(a), although their counsel never so stated. They did not, however, make a renewed motion pursuant to Rule 50(b) after the jury returned its verdict, as required by the Federal Rules of Civil Procedure. *See Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011) (noting that parties must "speak up at two times if they want the court to resolve the claim as a matter of law": before the claim goes to the jury, and after the jury issues its verdict (citing Fed. R. Civ. P. 50(a), (b))).

Without a district court Rule 50(b) ruling to review, we again decline to hear Cipo and Kovach's arguments. *See id.* at 420 ("Generally speaking, appellate courts do not directly review the actions of juries; they review a trial judge's assessment of the work of the jury . . . , allowing the trial judge who had a ring-side view of the witnesses to make a first cut."); *see also Unitherm Food Sys. v. Swift-Eckrich*, 546 U.S. 394, 400-401 (2006) (holding that a party's failure to file a post-verdict motion under Rule 50(b) leaves an appellate court "without power to

direct the District Court to enter judgment contrary to the one it had permitted to stand" (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947))).

Analogous reasoning also dictates our conclusion that Cipo and Kovach have forfeited their argument that the evidence presented at trial was insufficient to sustain the jury's verdict. On appeal, a party may not challenge the sufficiency of evidence based on the district court's denial of a Rule 50(a) motion alone. *Unitherm Food Sys.*, 546 U.S. at 405. As the Supreme Court has explained, although a district court *may* enter judgment as a matter of law preverdict when it concludes that the evidence is legally insufficient, it is not *required* to do so. *Id.* Denying a Rule 50(a) motion is thus not error in and of itself, but "merely an exercise of the District Court's discretion, in accordance with the text of the Rule and the accepted practice of permitting the jury to make an initial judgment about the sufficiency of the evidence. The only error here was [Cipo and Kovach's] failure to file a postverdict motion pursuant to Rule 50(b)." *Id.* at 406.

**C.     The district court did not abuse its discretion in denying the motion to exclude Reich's testimony**

Although Cipo and Kovach have forfeited most of their arguments on appeal, they did timely and properly appeal from the district court's denial of their motion to exclude the expert report and testimony of Reich. They moved to exclude Reich's testimony on relevance and prejudice grounds, not on the basis that he lacked expertise.

We review a district court's evidentiary rulings under the abuse-of-discretion standard. *United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011). An abuse of discretion exists only if we are "firmly convinced that a mistake has been made." *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006). The deferential abuse-of-discretion standard "applies to a district court's determinations of the relevance of evidence under Rule 401 [of the Federal Rules of Evidence], as well as determinations under Rule 403 that the prejudicial value of evidence outweighs its probative value." *Id.* (quoting *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995)).

Cipo and Kovach argue that Reich's testimony on trace evidence was irrelevant to any *Brady* claim, and that his testimony about DNA testing methods that were unavailable in 2000

was also irrelevant. But the standard for relevancy under Rule 401 is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). Evidence is relevant if it has "any tendency" to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. *Id.* (quoting Fed. R. Evid. 401). Under this standard, Reich's testimony that the DNA evidence showed no linkage between Ayers and the crime scene was relevant. Reich's testimony tended to prove that Ayers did not kill Brown, which bears on Ayers's malicious-prosecution claim by rebutting Hutchinson's testimony that Ayers confessed to the murder and increasing the likelihood that Cipo and Kovach instead fed Hutchinson details about the case.

Evidence concerning Ayers's innocence is also relevant to the issue of damages. *See Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012) ("A jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior and even a fair prosecution and trial may well have resulted in the person's imprisonment.").

Relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Cipo and Kovach argued below that Reich's testimony was cumulative, would confuse and mislead the jury, and was unduly prejudicial. The district court disagreed. We again owe considerable deference to the district court's determination. *Whittington*, 455 F.3d at 739 ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." (internal quotation marks omitted)).

Cipo and Kovach specifically contend that Reich's testimony was needlessly cumulative of the testimony of Curtiss Jones, one of Cipo and Kovach's witnesses, that the trace evidence collected from the crime scene did not implicate Ayers. But "[t]he mere fact that one other witness . . . has testified to a particular fact . . . does not render other testimony on that point 'cumulative.'" *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007). Moreover, even assuming,

arguendo, that Reich's testimony was cumulative, Cipo and Kovach "ha[ve] offered no explanation as to how the cumulative aspects of [Reich's] testimony adversely affected [their] case." *See Illinois Union Ins. Co. v. Heineman & Lovett, Inc.*, No. 88-1537, 1989 WL 99040, at *5 (6th Cir. 1989) (unpublished). Nor have they offered any explanation as to how the same testimony supposedly confused and misled the jury. We thus decline to hold that Reich's testimony caused any unfair prejudice to Cipo and Kovach, and instead conclude that the probative value of his testimony was not substantially outweighed by the factors set forth in Rule 403.

## III. CONCLUSION

For all of the reasons set forth above, we **DECLINE** to hear the appeal with respect to the qualified-immunity defense, the denial of the preverdict motion for judgment as a matter of law, and the challenge to the sufficiency of the evidence at trial because those arguments have been procedurally forfeited, and we otherwise **AFFIRM** the judgment of the district court.